IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE L.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 7684 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(I), 423, over four years ago in March of 2018. (Administrative Record (R.) 168-73). He claimed that he has been disabled since March 24, 2016, due to congestive heart failure and high blood pressure. (R. 178). Over the next two and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on December 23, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on January 8, 2021. [Dkt. #8]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

A.

Plaintiff was born on January 9, 1968, making him 48 years old when he claimed he became unable to work. (R. 19-39, 148). He has a GED. (R. 60). He has a solid work record, working steadily from 1992 through 2015. (R. 159-60). For most of that time, he drove a forklift at a factory. (R. 172-73). Back in March of 2016, plaintiff woke up one morning struggling to breathe; he had a heart attack. (R. 46). Ever since then, he became winded with exertion. (R. 46, 48). He thought he could walk 30 feet but he had to use a walker. (R. 49). He is a smoker, recently down to a half-pack a day from three packs a day. (R. 50-51). As far as going back to work, he felt his biggest issue would be getting to and from the job; drifting off while driving. (R. 55, 58, 61).

The medical record reflects that on March 24, 2016, plaintiff was taken to Presence Mercy Medical Center with difficulty breathing and in "dire distress," and was intubated in the ER. (R. 265, 572-83, 610). He was admitted with pneumonia and respiratory failure, as well as possible COPD. (R. 408, 544, 582, 584-85). His left ventricular ejection fraction was 35 percent, and he was diagnosed with non-ischemic cardiomyopathy, congestive heart failure, cardiomegaly, and hypertension. (R. 267, 269-70, 309-12). Additional diagnosis was underlying COPD. (R. 593, 604, 632). A pulmonary function study showed moderate obstructive lung defect and moderate restrictive lung defect. (R. 515, 1285, 1295).

On follow-up at Fox Valley Cardiovascular Associates in April, Mr. Lentz agreed to use a LifeVest, but he stopped using it after just four hours because he found it uncomfortable. (R. 46-47, 268, 272). By July 2016, his ejection fraction had improved to 50 percent, or borderline normal. (R. 289, 313-15); https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286#:~:text=

The%20left%20ventricle%20is%20the,between%2041%25%20and%2050%25.

In September of 2017, plaintiff sought treatment for a cough and shortness of breath. (R. 652). Oxygen saturation was 98% on room air. (R. 653). X-rays suggested pulmonary arterial hypertension. (R. 657, 661). In October, plaintiff's ejection fraction was 55 to 60 percent, with moderate left ventricular hypertrophy. (R. 317-19). He had no limitations and normal oxygen saturation at room air. (R. 325, 327). Physical exam was normal with the exception of some inspiratory and expiratory wheezes. (R. 675).

In November 2017, plaintiff sought treatment for elevated blood pressure of 192/106. He had stopped taking his medication. He denied any symptoms, however, and the balance of his physical examination, including respiration, was normal. (R. 351-53). In December 2017, plaintiff's oxygen saturation was 99%, examination was, again, normal, and plaintiff denied any symptoms – no chest pain, palpitations, shortness of breath, wheezing. (R. 374-76). At a follow-up examination in March 2019, plaintiff reported a low energy level due to being busy with his mother released from hospice. He had shortness of breath with exertion. (R. 1039-40). He had experienced leg cramps and myalgia, but that had resolved. (R. 1041). He denied any other symptoms. (R. 1040-41). Physical exam, including chest and lung and cardiovascular, was normal. (R. 1042). EKG showed normal left ventricular systolic function, ejection fraction over 55%, and normal diastolic function. (R. 1043, 1052).

Plaintiff's treating cardiologist, Dr. Muneer, completed a Cardiac Residual Functional Capacity Questionnaire from plaintiff's attorney on December 18, 2019. (R. 1289-93). His diagnosis

was non-ischemic, class II cardiac failure.[2] Prognosis was good. (R. 1289). The doctor felt that plaintiff's cardiac symptoms would interfere "occasionally," or between 6% and 33%, with the attention and concentration needed to perform even simple work tasks (R. 1290); that he could stand and walk for less than two hours per workday and sit for at least six hours; that he would need a job that permits shifting positions at will; that he would have to take a 30-minute break to rest every four hours (R. 1291); and that he could never lift more than ten pounds. (R. 1292). Dr. Muneer indicated that his findings applied from no earlier than July 15, 2019. (R. 1293). Dr. Muneer then resubmitted the checklist on January 14, 2020. (R. 1298-1302). He changed his answer about when plaintiff's symptoms became disabling drastically, writing that in this opinion they began March 24, 2016. (R. 1302).

Plaintiff is also obese, and between 2016 and 2019, his BMI ranged from 36 to over 39. (R. 267, 373, 927, 1306). In June 2019, plaintiff again had no symptoms and physical exam – including respiratory – was normal. (R. 1241). He also had to go to the ER in July 2019, complaining of lower back pain. (R. 251-64). He denied any other symptoms. Aside from some back tenderness to palpation, physical exam was normal including respiration. (R. 1255). He had a negative CT scan to check for kidney stones. (R. 1263). In January 2020, plaintiff reported a low energy level and difficulty sleeping. He denied any other symptoms. He had no cough, or shortness of breath with exercise. (R. 1304, 1306). A physical exam – including respiratory and cardiovascular – was, once again, normal. (R. 1306).

**B.**

---

[2] Slight limitation of physical activity. Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath). https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: congestive heart failure, hypertension, and obesity. (R. 24). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered the requirements for the Listings 3.02, 4.02, 2.02, 2.03, 2.04, 4.00, 5.00, 6.00, 11.04, and 11.14. (R. 24-25).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to:

> lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in his ability to sit, stand, or walk throughout an 8-hour workday. The [plaintiff] can occasionally climb ramps and stairs, and he can occasionally stoop, kneel, crouch and crawl, but he can never balance or climb ladders, ropes or scaffolds. He should not work where he would be exposed to excessive heat, cold, or humidity exceeding what is generally encountered in an office-type work environment. The [plaintiff] is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and he should avoid concentrated exposure to unguarded hazardous machinery.

(R. 25-26). The ALJ then reviewed plaintiff's allegations and activities and found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 27). The ALJ summarized the medical evidence, noting some normal findings, mild improvement, fair energy, and increased activities. (R. 27-29). The ALJ explained that he had limited the plaintiff to light work as a protective measure relative to the claimant's congestive heart failure, hypertension, and obesity. He accounted for plaintiff's dizziness

with environmental restrictions like not being around dangerous machinery or unprotected heights. (R. 29-30).

As for medical opinions, the ALJ found the report from plaintiff's treating cardiologist "generally unsupportable, inconsistent, and unpersuasive" due to treatment notes showing increasing activity and exercise recommendations. There were also repeated reports in which plaintiff denied symptoms. (R. 31). He also noted the change the doctor made in the date he felt plaintiff's limitations began. (R. 300. The ALJ found the opinions from the state agency reviewing physicians significant "somewhat supportable, consistent, and persuasive" because, due to exercise recommendations, the ALJ felt that plaintiff had no limitation in his ability to sit, stand, or walk throughout an eight-hour workday. (R. 31). The ALJ rejected the opinion from the state agency psychologist that plaintiff had mild limitations due to a mental impairment. The ALJ found there was no support for that in the record. (R. 31).

The ALJ then found that plaintiff was unable to perform his past work as an industrial truck operator, based on the testimony from the vocational expert. (R. 32). Then, again relying on the vocational expert's testimony, the ALJ found that plaintiff could perform other work that existed in significant numbers in the national economy. Examples of such work were: office helper (DOT number 239.567-010, SVP 2, 35,000 jobs in the national economy) and mail clerk (DOT number 209.687-026, SVP 2, 32,000 jobs in the national economy). (R. 33). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 34).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See

42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill,* – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The substantial evidence standard is a low hurdle to negotiate. *Biestek* , 139 S. Ct. at 1154; *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). If reasonable minds could differ, the court must defer to the ALJ's weighing of the evidence. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical

7

bridge between the evidence and the result."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of rushing water that can only be traversed by an engineering marvel like the Mackinac bridge. Another might see a shallow creek they can hop across on a rock or two. The Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[3] Given the record in this case,

---

[3] Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that the ALJ had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

(continued...)

the ALJ has done enough here.

### III.

The plaintiff raises three arguments for remanding this case. First, he argues that the ALJ improperly rejected the opinion from his treating cardiologist. He next contends that the ALJ made an incomplete RFC finding because he failed to consider plaintiff's COPD and its effect on his capacity to stand and walk. Finally, the plaintiff complains that the ALJ improperly rejected his subjective symptom allegations. Any other argument plaintiff might have made is, of course, waived. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

### A.

---

³(...continued)
We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Id.* at 287 (citations omitted).

Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

We begin with the ALJ's assessment of Dr. Muneer's opinion. Dr. Muneer noted that plaintiff had non-ischemic, class II cardiac failure (R. 1283, 1289) and that his prognosis was good. (R. 1289). The only symptoms plaintiff had were shortness of breath and fatigue, but these did not result in a marked limitation of physical activity. (R. 1290). Dr. Muneer said plaintiff could tolerate moderate stress, but should not be in a high-stress environment. (R. 1290). The doctor felt plaintiff could walk 2 blocks without rest, stand for 2 hours, and sit for 6 hours. (R. 1291). He had to take a thirty minute break once every 4 hours. (R. 1291 ("1 Q[uaque] 4 hrs")). But he could only lift 10 pounds rarely, and less 10 pounds occasionally. (R. 1291). Dr. Muneer estimated plaintiff would miss one day of work a month. (R. 1293). And the doctor offered two different estimates for he earliest date plaintiff's limitations began. Initially, on December 18, 2019, he said July 15, 2019. (R. 1293). A month later, on January 14, 2016, he said March 24, 2016. (R. 1301). The ALJ rejected Dr. Muneer's opinion as "generally unsupportable, inconsistent, and unpersuasive." (R. 30). He explained that the doctor's treatment notes did not support the "profound limitations" the doctor found. (R. 30).

Because plaintiff filed his claim after March 27, 2017, the Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, revised 82 Fed. Reg. 15132; see also 81 Fed. Reg. 62,560 (discussing proposed changes), apply. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). ALJs no longer must "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); see also 81 Fed. Reg. 62,560, 62,574 (discussing the proposed rule changes) ("In addition to proposing to use the term 'persuasive' instead of 'weight' for medical opinions in 20 CFR 404.1520c and 416.920c, we also propose to use the term 'consider' instead of 'weigh' in 20 CFR 404.1520b and 416.920b.").

But, as before, "supportability" and "consistency" remain hallmarks of assessing medical opinions:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Although ALJs must consider a number of additional factors, they need only explain how they considered supportability and consistency. 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2). In this case, the ALJ adequately explained his reasoning. Remember, only minimal articulation of the ALJ's reasons is sufficient. *See Deloney v. Saul*, 840 F.Appx. 1, 4 (7th Cir. 2020)("We will defer to an ALJ's decision to give a treating physician's opinion less than controlling weight if the ALJ considers the factors listed under § 404.1527(c) and minimally articulates his reasoning."); *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019); *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008).

As the ALJ indicated (R. 30-31) and detailed in his discussion of the medical evidence (R. 27-29), treatment notes revealed normal examinations time and time again. And, time and again, plaintiff denied any serious symptoms and, indeed, often denied any symptoms at all. In April 2016, chest, lung, and cardiovascular exams were normal. Plaintiff reported he was feeling well aside from mild shortness of breath with exertion. (R. 266-67). In May 2016, plaintiff said his energy level was good and, again, he denied any symptoms – no chest pain, heaviness, tightness, aches, or burning. (R. 273). In October 2016, plaintiff again denied any symptoms and said that while he did not have an exercise regimen, he "stays very active around his home." (R. 1141). Physical examination – including chest and lung, cardiovascular, and peripheral vascular – was completely normal. (R.

11

1142). The October 2017 physical exam revealed no limitations, and breath sounds were clear to auscultation with normal effort (R. 325). EKG revealed no gross ST elevation or depression. (R. 326). Ejection fraction was in the normal range at 55-60%. (R. 331). Chest x-ray was normal. (R. 333). Examination was again normal. (R. 346). In July 2018, plaintiff's examination was, again, essentially normal. (R. 421, 429). Plaintiff reported a fair energy level in November 2018, but did complain of shortness of breath and palpitations with heavy exertion. (R. 1062-63). Examination was essentially normal, with normal breath sounds bilaterally and no edema (R. 1065).

     As is clear, there is a logical gap between the examination notes and Dr. Muneer's opinion that plaintiff cannot even manage sedentary work: plaintiff's examinations are almost always normal, and he generally denied any symptoms. When he does mentions symptoms – like shortness of breath – they are brought on by exertion or heavy exertion. That is not the medical record of an individual who, as Dr. Muneer would have it, can hardly lift 10 pounds and has limitations standing and sitting. The ALJ was well within his province to reject the doctor's opinion for being out of line with the medical record and his own notes. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021)("An ALJ may decline to give a treating physician's opinion controlling weight when the opinion is inconsistent with the physician's treatment notes."); *Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021)("... the ALJ was correct to afford little weight to this evidence because many of the statements included in the letter . . . were contradicted by [the doctor's] own treatment notes . . . ."); *Schmidt v. Astrue*, 496 F.3d 833, 842–43 (7th Cir. 2007).

     The plaintiff also briefly complains that the ALJ improperly rejected the opinions of the state agency reviewing physicians, who felt plaintiff could lift twenty pounds occasionally, ten pounds

12

frequently, and he could sit, stand, or walk for six hours in an eight-hour workday. [Dkt. # 17, at 10]. The ALJ rejected these opinions insofar as they found limitations on sitting, standing, and walking, "upon consideration of all evidence of record" and given the advice from doctors that plaintiff should exercise regularly. (R. 31). Again, the record, in the main, is one of normal exam results and symptoms only with exertion. As with any medical opinion, opinions from state agency reviewers are only as authoritative as they are supportable and consistent with the medical record.

**B.**

Plaintiff next argues that the ALJ failed to account for his COPD in his residual functional capacity finding. Plaintiff contends that his shortness of breath is so bad that it had a limiting effect on his ability to stand and walk. [Dkt. #17, at 11-12]. Plaintiff points to his hospital admissions in March 2016, when he sought treatment after two weeks of shortness of breath for which COPD was listed as a possible contributing factor; and on October 12, 2017, for worsening shortness of breath, which at least involved COPD as a factor. [Dkt. #17, at 11-12]. But diagnosis is not disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). What matters is the severity of the condition and how it limits plaintiff's capacity to work based on clinical and/or laboratory findings. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("... it makes no difference if [plaintiff] saw [his doctor] "every two-and-a-half *731 months" ... what does matter is that [his doctor] did not confirm the severity of [plaintiff's impairment] with medical examinations or tests."); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions of hers but their severity. . . .").

There is little in the evidence plaintiff cites to prove he is unable to stand or walk due to his shortness of breath, and there is far less in the balance of the record. In March 2016, doctors noted

13

that he was a chronic smoker with a history of COPD. X-rays showed possible pulmonary edema. (R. 593). In October 2017, plaintiff was noted to be complaining of shortness of breath with exertion. (R. 341). Additionally, he was smoking one pack of cigarettes a day. (R. 341). Doctors noted upper respiratory tract infection and a history of COPD. (R. 339). Issues at that time were said to be brought on by non-compliance with medications. (R. 339). Chest x-ray was negative. Upon treatment, plaintiff felt much better, and his pulse oxygen reading was all the way up to 98%. (R. 681, 683).

Moreover, and again, as the ALJ detailed in his discussion of the medical record, most of the evidence – at the very least, substantial evidence – fails to suggest that plaintiff's shortness of breath would lead to any restrictions on walking or standing. Respiratory exams regularly showed normal functioning. (R. 27-28 citing R. 325 (October 12, 2017: no limitations, O2 saturation normal, breath sounds clear to ausculation), 420-21, 428-29 (July 26, 2018: no acute concerns, chronic conditions stable, exam normal; denied chest pain, shortness of breath, wheezing or coughing; ), R. 1042-43 (March 6, 2019: chest and lung exam normal; plaintiff denied any respiratory symptoms); R.1065-66 (November 28, 2018: plaintiff denied any respiratory symptoms; chest and lung exam was normal). The ALJ also noted the repeated doctor visits at which plaintiff indicated shortness of breath was brought on only with exertion or denied any respiratory issues at all. (R. 27-29 citing R. 273, 282 290, 353, 376, 384, 402, 420, 428).

### C.

Finally, the plaintiff finds fault with the ALJ's assessment of his allegations which, as the

plaintiff says, the ALJ found "generally not supported by the evidence of record." [Dkt. #17, at 13-15]. As already detailed, the medical evidence, in the main, is a record of mostly normal respiratory and cardiovascular examinations, with normal oxygen saturation, and more recently, normal ejection fractions. While the Seventh Circuit has said that ALJs ought not to focus exclusively on objective medical evidence when assessing a plaintiff's allegations, *see, e.g., Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014), the court has also made it clear that ALJs are entitled to "consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020); *Deborah M. v. Saul*, 994 F.3d 785, 789–90 (7th Cir. 2021); 20 C.F.R. § 404.1529(c). That's because a plaintiff's allegations, "taken alone, are not conclusive of a disability," *Zoch*, 981 F.3d at 601; 42 U.S.C. § 423(d)(5)(A); *Wilder v. Kijakazi,* 22 F.4th 644, 651 (7th Cir. 2022)("The Social Security Act requires that an individual 'furnish[ ] such medical and other evidence" of a disability in order to qualify for benefits.'"); *Anders v. Saul*, 860 F. App'x 428, 434 (7th Cir. 2021), and "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *see also Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018). Here, the ALJ based his assessment not only on the objective medical evidence but also, as he indicated, on the record of plaintiff repeatedly denying symptoms during his doctor visits. (R. 27).

More specifically, the plaintiff complains that the ALJ improperly noted that no doctor told him to use a walker. [Dkt. #17, at 13]. All the ALJ did was to note that not only had no doctor prescribed a walker, but doctors actually encouraged plaintiff to exercise more. (R. 27). Plaintiff himself indicated, from time to time, he was active around his home, doing chores like yardwork.

15

While "a [walker] does not require a prescription," *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), the record gives no indication that plaintiff needs to use one. In other words, the ALJ was looking at the walker as another exaggerated allegation by plaintiff that the evidence failed to support.

And, lastly, plaintiff asserts that "no examinations in the record are inconsistent with [his] primary complaints of shortness of breath and fatigue with exertion," citing several instances where plaintiff's exam results were normal. [Dkt. #17, at 14 (citing R. 267 (normal chest, lung, and cardiovascular exam), 325 (normal breath sounds); AR. 28, citing AR. 445 (walking 50 feet without support), 1065 (normal breath sounds and no edema), 1252 (being lifted by paramedics from walker after calling with back pain and inability to get out of walker); R. 353, 421 (normal physical exams)). It's not clear what plaintiff is driving at here, but while such evidence might not conclusively rule out his allegations, it certainly does not confirm or support them. And, in the final analysis, it is up to the plaintiff to prove he is disabled with medical evidence. *Kaplarevic v. Saul*, 3 F.4th 940, 943 (7th Cir. 2021); *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021); *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). A series of normal examinations does not get that job done. And, again, the ALJ's decision need only be supported by *substantial* evidence, not *all* the evidence or even a preponderance of the evidence. *Cohen v. Astrue*, 258 F. App'x 20, 26 (7th Cir. 2007); *Schmidt*, 496 F.3d at 842; *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgement [Dkt. #22] is granted and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/9/22